LEWIS *v.* STATE OF INDIANA.

[No. 468S61. Filed August 29, 1969. Rehearing denied October 8, 1969.]

*Palmer K. Ward,* Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

HUNTER, J.—Appellant was charged with kidnapping to which he entered a plea of not guilty. Trial by jury resulted in conviction of the offense as charged and a sentence to life imprisonment.

Appellant's sole assignment of error is that the trial court erred in overruling his motion for a new trial. The motion for new trial is grounded on the contention that the verdict is not sustained by sufficient evidence in that there was no evidence presented to show that the defendant was not acting in pursuance of the laws of the State of Indiana or of the United States. Appellant also contends that the verdict is contrary to law and that the court erred in refusing to sustain defendant's motion for discharge at the close of the state's case.

A review of the evidence most favorable to the state is as follows: on May 22, 1967, appellant approached the at-

tendant at a Wake-Up Service Station and said that he needed some money. The attendant replied that he didn't carry enough to even interest appellant, whereupon he was told to step inside the station. Appellant had reached inside his belt and it appeared to the gas station attendant that he had his hand on a gun. About this time the victim of the kidnapping, one Sylvester Adams, drove into the service station to purchase a package of cigarettes. Appellant walked to the car, got into the front seat, displayed the weapon and told Adams to drive on. From the testimony of Adams it appears that he drove appellant all over the immediate neighborhood at appellant's direction although without any apparent destination. At one point appellant ordered Adams to stop and both proceeded to a store where he purchased a bottle of wine. Throughout this time appellant had the gun exposed, which according to Adams frightened him and for that reason he did everything appellant told him.

After approximately two hours of this aimless riding, appellant ordered Adams to pull into another gas station ostensibly to get directions. Upon obtaining directions they began to leave the station, but appellant then ordered Adams to go back into the gas station on the pretense that they were having car trouble. The attendant walked out to the car to see what the trouble was and was told that something was wrong with the engine. Both Adams and appellant got out of the car and raised the hood. At this point appellant asked the attendant how much money he had, to which the attendant replied that he didn't have any. Appellant then asked how much was inside the station and the attendant told him that there wasn't very much, at which time appellant produced what appeared to the attendant to be a gun and told the attendant to walk inside the station. Upon entering the station, one of the attendant's helpers came out from a backroom with a .22 rifle and told appellant to stick his hands in the air. During this time, Adams had taken the opportunity to flee the scene and after proceeding

directly home called the police and reported the incident. In the meantime, appellant was ordered outside the gas station and released. The attendant immediately reported the attempted robbery to the police who picked up appellant on foot just a short distance from the station a few minutes later. That same evening appellant was taken back to both stations and positively identified by Adams and the attendants of both service stations as the man who had attempted the holdups. The gun which the police found on appellant's person turned out to be a toy pistol.

In his brief, appellant urges that the verdict is not sustained by sufficient evidence to show that the defendant was not acting in pursuance of the laws of Indiana or of the United States. For the same reason appellant argues that the trial court erred in denying the appellant's motion for a discharge at the conclusion of the state's case in chief. Appellant further contends that there was nothing in the evidence to show any force or threats by the defendant against the witness Adams and that the pre-trial identification of appellant at the scene of the crime by Adams and the service station attendants, without the benefit of counsel violated his constitutional right of assistance from counsel at every critical stage of the proceedings as ruled by the Supreme Court of the United States in *United States v. Wade* (1967), 388 U. S. 218.

We turn first to the question of sufficiency of the evidence. Kidnapping is defined in Ind. Ann. Stat. § 10-2901 (1956 Repl.) as follows:

"Whoever kidnaps, or forcibly or fraudulently carries off or decoys from any place within this state, or arrests or imprisons any person, with the intention of having such person carried away from any place within this state, unless it be in pursuance of the laws of this state or of the United States, is guilty of kidnapping, and, on conviction, shall be imprisoned in the state prison during life."

Appellant, in his brief, first contends that there was no evidence before the jury from which they could infer that the acts of defendant were not in pursuance of the laws of the State of Indiana or of the United States.

A close reading of the statute would indicate that such language has been inserted to protect a person who has the legal authority to forcibly carry off an individual, as for example with a parent and his child or a police officer and a suspected criminal. It would therefore not be necessary to show that the defendant was in fact breaking a law of the state as appellee seems to be arguing, but rather that the defendant was not in such a relationship to the victim as to afford him immunity under the statute. The phrase ". . . *unless* it be in pursuance of the laws of this state or of the United States . . ." (our emphasis) is an exception to the general offense of kidnapping and proof of the offense must include a showing that the defendant does not come within that exception or evidence from which an inference to that effect may be drawn. Here, by the very nature of the surrounding circumstances, as set out by the state's evidence, the jury could reasonably infer that the defendant was *not* in such a relationship to the victim that he was afforded immunity by the statute. It is not important, as both parties to this appeal seem to think, to show that in the process of committing the alleged kidnapping, he was also violating another law of the state or United States and for *that* reason was not acting ". . . in pursuance of the laws . . ." If such a construction were given the statute, even the parent who with legal authority was forcibly transporting his child would be guilty of kidnapping if it could be shown that he was at the same time also violating the state speed laws.

This court is of the opinion therefore that the state sustained its burden by presenting evidence from which a reasonable inference could be drawn that the appellant was not so related to the victim that the forcible carrying away

of such victim was exempted by the statute. For the same reason we hold that the trial court's refusal to grant a directed verdict at the close of the state's case, the grounds for such motion also being the alleged failure of the state to prove this element of the crime, is without error.

We next turn to appellant's argument that there is no evidence to show any force or threats by the defendant against the victim Adams. At the outset we must note that such argument is not properly presented to this court. It was not set forth in the memorandum in the motion for new trial and therefore cannot be urged on appeal. Supreme Court Rule 1-14B reads as follows:

> "Whenever a new trial is requested on the ground or grounds 'that the verdict or decision is not sustained by sufficient evidence or is contrary to law,' the moving party shall file a memorandum stating specifically under such itemized cause wherein such evidence is insufficient or the verdict or decision is contrary to law. The party filing such motion shall be deemed to have waived any ground not specified in the memorandum."

Even had such argument been properly presented, it is without merit. There is ample evidence of probative value that Adams drove appellant around the neighborhood against his own will being afraid not to comply since appellant appeared to have a gun. The fact that the gun ultimately turned out to be a mere toy in no way negates the very real fear experienced by the victim at the time. It is well recognized that the use of a toy gun, or the mere appearance that the defendant was in possession of a gun will be sufficient to establish the "violence or by putting in fear" element of robbery. *Cross v. State* (1956), 235 Ind. 611, 137 N. E. 2d 32. See also annotation at 61 A. L. R. 2d 996. Certainly this reasoning is just as applicable in the present situation. It is our opinion therefore that the coercive force inherent in the use of a toy pistol, where the victim reasonably believes it to be a real

gun, is sufficient force to uphold that element in the crime of kidnapping.

Finally, appellant contends that the pre-trial identification at the scene of the crime by Adams and the attendants of both service stations violated his constitutional right of assistance from counsel at every critical stage of the proceedings. Here again the question is not properly raised on appeal. As appellee points out, not only did the appellant fail to object at trial to such evidence of identification but he himself elicited the evidence during cross examination of the state's witnesses. It is well established law in Indiana that one cannot raise objections for the first time on appeal when there was sufficient opportunity to object during the course of the trial. *Tyler v. State* (1968), 250 Ind. 419, 236 N. E. 2d 815. *Gernhart v. State* (1954), 233 Ind. 470, 120 N. E. 2d 265.

Not only did appellant fail to object to the introduction of such evidence but he failed to set forth the alleged error in his motion for a new trial. As we said in *Scott v. State* (1968), 250 Ind. 532, 234 N. E. 2d 474, 479

"Errors asserted as grounds for review on appeal must be included in a motion for a new trial."

Supreme Court Rule 2-6. *Hayden v. State* (1964), 245 Ind. 591, 199 N. E. 2d 102. Notwithstanding the foregoing, the appellant's contention fails to impress us.

In support of his argument, appellant cites *United States v. Wade, supra,* which involved a pre-trial identification of the defendant in a police lineup. Although the Supreme Court talks about pre-trial identification in general terms and the need to insure the defendant a fair trial by affording him the benefit of counsel at every "critical" stage of the prosecution, it is evident by their frequent references thereto, that they are primarily concerned with the lineup itself and the injustice often meted the defendant as a result. The *Wade* rule was further

enunciated in *Gilbert v. California* (1967), 388 U. S. 263 in which the defendant was identified in a police lineup held some sixteen days after the alleged offense. In contrast however, the defendant's pre-trial identification in *Stovall v. Denno* (1967), 388 U. S. 293 was held not violative of due process where such confrontation took place two days after the offense and the defendant stood alone to be identified. Justice Brennan, in the majority opinion admits that the fairness of such a confrontation depends on the totality of the circumstances surrounding it. The question it would seem then becomes, was it a reasonably fair pre-trial confrontation in light of the constitutional standards just alluded to? Looking squarely at such circumstances as presented by the case at bar, we are not judicially inclined to extend the holding of *Wade* and *Gilbert* to include a situation like that before us, where immediately upon being taken into custody the suspect is returned to the scene of the crime to be identified. Less than an hour had transpired between the time the incident was reported and the suspect was positively identified by three people.

Where the confrontation for identification purposes takes place a reasonably short time after the offense, it would seem to be in the best interests of the suspect as well as that of efficient law enforcement to then allow the identification even in the absence of counsel. The image of the offender is still fresh in the minds of the witnesses, a situation which might not exist after several days, in which time the suspect is seeking an attorney to represent him at the confrontation. Also, should the suspect not be identified as the offender, his release could be immediate.

Although we have chosen to deal with the issue of appellant's pre-trial identification, as a technical matter, he cannot avail himself of the rulings in *Wade* and *Gilbert* since the *Stovall* case explicitly holds that such rulings are not to be retroactive and that they

apply only to confrontations taking place after June 12, 1967. The pre-trial identification of which appellant complains took place on May 22, 1967.

Appellant's contention that the verdict is contrary to law is deemed waived since it is not argued in his brief. ■ Supreme Court Rule 2-17.

Having given due consideration to each of appellant's arguments, although not all are properly presented, we find that the judgment of the trial court should be affirmed.

Judgment affirmed.

Arterburn and Givan, JJ., concur. DeBruler, C. J., concurs with opinion. Jackson, J., dissents without opinion.

### CONCURRING.

DEBRULER, C. J.—I concur fully in the opinion of the majority wherein they ignore the procedural defects in the appellant's motion for a new trial and supporting memorandum, and do not base their decision on those procedural defects. I would prefer that this Court remand this case to the trial court for his consideration of those issues not properly presented in the motion for new trial. See my dissenting opinion in *Graham v. State* (1969), 252 Ind. 367, 249 N. E. 2d 25. I further concur in this decision of the majority wherein the standards set forth in *United States v. Wade* (1967), 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, are held not to apply to pre-trial identifications occurring prior to the opinion in the *Wade* case on June 12, 1967. This decision not to apply the *Wade* rule should dispose of the pre-trial identification issue raised by appellant.

The majority's discussion of the application of the *Wade* rule to the facts in this case constitutes, in my opinion, pure dicta and an erroneous interpretation of that rule. It is clear to me that the *Wade* case is not restricted to ordin-

ary police lineups. A proper interpretation of the following language in the *Wade* case would render any testimony concerning the pre-trial identification of the appellant inadmissible:

"In sum, the principle of *Powell v. Alabama* and succeeding cases requires that we scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." 18 L. Ed. 2d at 1157.

"But the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial." 18 L. Ed. 2d at 1158.

"The pretrial confrontation for purpose of identification may take the form of a lineup, also known as an 'identification parade' or 'showup,' as in the present case, or presentation of the suspect alone to the witness, as in *Stovall v. Denno*, 388 U. S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, *supra*. It is obvious that risks of suggestion attend either form of confrontation and increase the dangers inhering in eyewitness identification." 18 L. Ed. 2d at 1159.

". . . And the vice of suggestion created by the identification in *Stovall, supra,* was the presentation to the witness of the suspect alone handcuffed to police officers. It is hard to imagine a situation more clearly conveying the suggestion to the witness that the one presented is believed guilty by the police." 18 L. Ed. 2d at 1161.

The dissent stated:

"The rule applies to any lineup, to any other techniques employed to produce an identification and a fortiori to a face-to-face encounter between the witness and the suspect alone, regardless of when the identification occurs, in time or place, and whether before or after indictment or information." 18 L. Ed. 2d at 1171.

It is equally clear that the test for admissibility of testimony concerning pre-trial identification of an accused used in *Stovall v. Denno, supra,* was the pre-*Wade* test. The Supreme Court explicitly held that the *Wade* rule would not be applied there because the rule was not to be given retroactive application. Therefore, the test in *Stovall* cannot be used to interpret and limit the application of the *Wade* rule.

NOTE.—Reported in 250 N. E. 2d 358.